## SYLVIA E. SPARROW v. WISEMAN A. SPARROW.[1]

July 1, 1927.

No. 26,118.

**Action for money already due a wife under an antenuptial contract is not defeated by her subsequent desertion of her husband.**

Where the promises of the husband, under an antenuptial contract, to make payments of money to his wife have matured and the money has become due, the causes of action so perfected are not defeated by the wife's subsequent desertion of the husband.

Husband and Wife, 30 C. J. p. 662 n. 38.

---

See note in 29 A. L. R. 199; 13 R. C. L. 1033; 3 R. C. L. Supp. 117; 5 R. C. L. Supp. 724.

•

Defendant appealed from an order of the district court for Dodge county, Senn, J., denying his motion for a new trial. Affirmed.

*McCaughey & McCaughey* and *Edgerton, Dohs & Edgerton,* for appellant.

*Granger & Clemens,* for respondent.

STONE, J.

Pending this action for the recovery of money on an antenuptial contract, plaintiff, wife of defendant, died, and the action has been continued by her executor. After a verdict for plaintiff, defendant appeals from an order denying his motion for a new trial.

The contract was executed just before the marriage of the parties, February 13, 1919. It recites that the marriage was about to be solemnized and that defendant was then the owner of property valued at over $130,000, which he expected to increase. . In consideration of those premises and the promise of defendant to make the payments for the recovery of which this action is brought and certain others for her support in the event the wife survived defendant, she agreed to "disclaim and release" the defendant, his

[1]Reported in 214 N. W. 791.

·heirs, representatives, and assigns from "all and every right, claim and estate, present or future," which otherwise she would have acquired by the marriage in defendant's property. Defendant on his part, in similar fashion, released all claims which otherwise he would have acquired by the marriage in and to the separate estate of the wife. These mutual releases took effect automatically and, so far as the terms of the instrument are concerned, became irrevocable upon the solemnization of the marriage. The faithful performance of the obligations of the marriage about to be entered into was not mentioned as either term or condition of the agreement.

The contract called for the payment to the wife of $5,000 in five equal annual instalments. Even the first one, due on the execution of the instrument, was not made in cash, but defendant gave his wife his promissory note in lieu thereof. No payments having been made on that note or on the deferred instalments, this suit is for the recovery of the entire sum with interest.

The defense is, not that the wife breached the antenuptial contract itself, but that she did not fulfil the obligations of her marriage in that on or about July 3, 1925, she abandoned defendant and refused longer to live with him or perform any of her marital obligations, and that soon thereafter she brought an action for separate maintenance. The last instalment of money due plaintiff under the antenuptial contract matured February 13, 1923. There is no suggestion that up to that time she had not faithfully performed her marriage vows. The implication is rather to the contrary. To the issue thus raised, plaintiff pleaded justification of her refusal to continue cohabitation with defendant. The issue went to the jury and after verdict for plaintiff, the learned trial judge, in denying the motion for a new trial, expressed the view not only that the verdict was right but that he should have granted plaintiff's motion for a directed verdict. In that view we concur.

It will be observed that the last of defendant's promises to make the payments matured more than two years before the breach charged against his wife. The promise of the husband to make the

payments was not dependent upon the performance of her marital duties, at least beyond the maturity of the payments. Whether it was so dependent even before is open to serious question. But, plainly, the promises were so far independent that, as they accrued and remained unpaid, she not being herself in default, they gave the wife perfected causes of action of such independent nature that they could not be defeated by any subsequent breach by her of the marriage contract.

The rule under which such independent promises are enforced, notwithstanding a subsequent breach by the other contracting party, was recently considered here in O'Brien v. Liberty Min. Co. 164 Minn. 186, 204 N. W. 625. No reason appears why it is not applicable to antenuptial contracts. "As a general rule the rights granted under a marriage settlement are not forfeited by subsequent misconduct." 30 C. J. 662. See also 13 R. C. L. 1033. The mere fact that a wife has separated from her husband is not of itself sufficient to defeat her enforcement of an antenuptial contract. Schnepfe v. Schnepfe, 124 Md. 330, 92 A. 891, Ann. Cas. 1916D, 988. But where a wife of seven weeks deserts her husband without cause and then seeks in equity to compel the specific and continued performance of an antenuptial contract promising her an annuity out of the husband's estate, there is good ground for denying that relief. York v. Ferner, 59 Iowa, 487, 13 N. W. 630. There is a wide difference between a decree in equity for the specific performance of an antenuptial promise of future payments and a judgment at law for money earned and long past due. In the former case, the breach of marital obligation can well be an obstacle to equitable relief. But in the latter case, a breach subsequent to the accrual of the cause of action cannot very well be a defense at law. Johnston v. Johnston, 182 Iowa, 481, 166 N. W. 65. The latter is this case.

Order affirmed.