## Shure v. Shure

*Elias Goodstein, S. John Morrow* and *E. J. McDaniel,* for plaintiff.

*Joseph W. Ray, Jr.,* and *Herman M. Buck,* for defendant.

CARR, J., August 23, 1938.—This action in assumpsit was brought by a wife against her husband to recover the amount of his promissory note to her order made and delivered under the terms of a post-nuptial agreement, and also to recover the proceeds in his hands of a sale of land belonging to her. His defense to the note was that a breach of the agreement on her part estopped her from asserting the right to payment. As to the money from the sale, he pleaded that it had been used by him with her consent in paying family living expenses. At the conclusion of the trial a verdict was directed for plaintiff on both claims. Now before us are defendant's motions for a new trial and for judgment non obstante veredicto. The reasons assigned call in question the correctness of the trial judge's action in directing a verdict for plaintiff, in directing the inclusion of interest on the note, and in refusing to direct a verdict for defendant.

Plaintiff, Sara Shure, and defendant, Reuben Shure, her husband, were married in 1916 and lived together

until 1920, when discord resulted in her leaving him. After a separation of 13 months, he prevailed upon her to return to him and she remained until January 1925, when she again left. On March 31, 1925, they entered into the agreement that forms the basis of this controversy. By its terms he invited her to return to him once more, promising to treat her in a kindly, considerate, courteous, and dutiful manner, and "as a substantial and concrete manifestation of his love and affection, and better to provide for her comfort, maintenance and support, and to secure her happiness and contentment," he made a settlement upon her of some real and personal property and in addition the sum of $12,000 in money to be paid to her at the expiration of one year, which sum was evidenced by the note now in suit. The agreement provided further that if she "exercises the right to leave" him and "possess herself of the property hereinbefore granted conditionally, and the note . . . such decision and determination by her shall be considered as a release, quitclaim and discharge of all her right to receive from the said husband any alimony, counsel fees or costs in any subsequent proceeding for divorce or any participation in his estate as widow, heir, or otherwise, in case she survive him".

Thereafter the parties lived together for eight years. During that period she sold a small parcel of her property, the proceeds of which he collected and retained. The note was not paid at maturity and has not been paid since.

On November 12, 1933, she withdrew finally, and a month later began suit for divorce from bed and board, asking the court to allow her counsel fees and alimony pendente lite—which she has since been receiving. The their two children, who went with her. The court awarded her $500 for counsel fees, and $100 a month alimony pendente lite which she has since been receiving. The divorce case is still undetermined, neither party having moved for a reference.

On July 2, 1936, she brought the present action to recover the $12,000 principal of the note with interest from maturity, and $925 which she alleged he had collected from the sale of her real estate, with interest. This latter sum was reduced at the trial to an admitted $650. In the directed verdict interest was allowed on the note from its maturity on March 31, 1926, and on the $650 from November 12, 1933, the date of their final separation.

The questions here involved are the following:

1. Has her application for alimony pendente lite and counsel fees in her action for divorce and her receipt of the sums allowed by the court estopped her from demanding payment of the $12,000 note?

2. If she can recover upon the note is she entitled to interest during the period that the family relation existed?

3. Does the record disclose any issue of fact for the jury?

We do not have before us the question whether defendant should have credit upon his note for his payments of alimony pendente lite and counsel fees. He has elected not to plead them as a set-off to plaintiff's claim, and therefore they are not recoverable in this action. He has preferred to stand upon the ground that an alleged breach of the agreement by plaintiff precludes her from receiving any benefits under its terms. He maintains that her demand for payment of the note is inconsistent with her assertion of rights that were to be surrendered. He urges that her covenant for the release of her right to alimony and counsel fees, under the circumstances stated in the agreement, is not only a covenant but also a condition on the failure of which his covenant to pay the note became wholly ineffective.

Counsel for defendant contended at trial that the cause of plaintiff's withdrawal was immaterial because under the terms of the agreement the settlement was to relieve him from the payment of any future alimony or counsel.

fees in the event that she should decide to leave him for any reason whatever. Assuming, but not deciding, that the circumstances have happened under which he was to be released from these payments, can we hold as a matter of law that the two covenants are so far interdependent that her forbearance to claim alimony pendente lite and counsel fees is a condition subsequent on the breach of which his obligation fails? There is no stipulation for the dependency of covenants. It is true that the covenants of each party are in consideration of the covenants of the other, but this does not make them dependent: Hughes, Jr., v. Burke, Trustee, 167 Md. 472, 175 Atl. 335. Defendant promised to pay the note on March 31, 1926, and on nonpayment plaintiff was expressly authorized to proceed to enforce it in such manner as she should determine. His obligation was then absolute and immediately payable; her cause of action was complete. In our view of these promises, a subsequent breach by her of the agreement, although it might entitle him to a counterclaim or a set-off, could not preclude her recovery on the note: Sparrow v. Sparrow, 172 Minn. 91, 214 N. W. 791; Cover v. Hoffman, 213 Pa. 213. It is apparent from the very nature of his promise that he relied upon his remedy without intending to make his duty to pay at the due date conditional upon her uncertain future action: Edgar v. Boies, 11 S. & R. 445, 450; Stevenson v. Kleppinger, 5 Watts 420.

The distinctions between covenants and conditions are often extremely subtle. We must depend less on artificial rules than on the application of good sense and sound equity to the object and spirit of the contract, for the boldest generalizations will be found subject to many exceptions. We may safely say, however, that when mutual covenants go to the whole consideration they may be held reciprocal, but when a covenant goes only to a part of the consideration and a breach may be fully compensated in damages, it is independent: Obermyer v. Nichols, 6 Binn. 159. Forfeitures, being regarded with disfavor,

are to be enforced only where the language of an agreement compels, and not as here where the breach, if one occurred, readily admits of recompense and restoration. Had this defendant chosen to plead his payments to his wife of alimony and counsel fees as payments on his note, he would have had a complete remedy for any wrong done him.

The construction of the agreement for which counsel for defendant contends seems to us to be inconsistent both with the language of plaintiff's covenant and with the equitable principle that he invokes. Whether there was actually a breach of the agreement by her depends, as it appears to us, upon the question whether her leaving was voluntary or not. She did not, in terms, agree that the mere fact of her leaving him should be a release of all her claims to alimony and counsel fees; it was her decision and determination to leave him that were to be considered as a release. The words "decision and determination" imply liberty to decide and determine, and indicate an intention to reserve the possibility of an involuntary withdrawal. What the facts are we do not know, defendant at trial having properly declined a tender of this issue as immaterial under the pleadings; but whatever the facts may be, it would be a dangerous perversion of the equitable doctrine of estoppel to construe the agreement so narrowly that he could coerce a surrender of her rights and a discharge of his liabilities. If, by withholding payment of the note and treating her cruelly and intolerably, he was able to maneuver her into a position where she was compelled to leave him and appeal to the court in order to obtain the means of subsistence for herself and her children, it would be unconscionable to permit him to accuse her of a breach of the agreement. We think that her covenant provided him with a shield, but not also with a sword.

The second question involved is the liability of defendant to pay his wife interest on his note from its maturity. It is, of course, well settled that a husband who receives

any portion of his wife's separate estate without any stipulation as to terms is her debtor for the repayment of the principal but is not, as a general rule, chargeable with interest. It lies on him to show the agreement that relieves him from the payment of the principal, and on her to show the agreement that entitles her to interest; but the agreement in either case may be implied from the circumstances attending the transaction.

The reason that the husband is not ordinarily liable for interest rests upon the presumption that the wife intended to make a gift of the income to be expended for the benefit of the family, and that she has shared in this benefit. In the present case the facts do not admit of such a presumption. Their agreement was that "the settlement hereby made is not intended to relieve the husband of his marital and legal duty to support and maintain the wife in a condition suitable to his fortune and station in life". She therefore did not intend that he should spend the income of her money for her support and she did not receive any benefit at all. Moreover, she held his written obligation that was definitely to be paid at a fixed maturity in money, unless in the meantime he should convey to her or her trustee "improved income-producing real estate of a sound and marketable value of not less than $12,000," which income she was to receive. We think that these arrangements rebut the presumption that the husband was not to be charged with interest and strongly evidence his liability for its payment: Hawley, Trustee, v. Griffith, 187 Pa. 306; Ruth's Estate, 36 Lanc. L. R. 114.

Finally, defendant contends that the case was for the jury on a conflict of testimony between plaintiff and defendant in relation to his claim to retain the proceeds of the sale of her real estate. In his examination defendant testified that he received the money and used it "for the house"; that he had an "understanding" with her about it; that she knew what it was being used for; that "nothing at all" was said about it; and that she never

made any request of him in regard to it. A reading of the record will show that, while he freely stated his assent to the conclusions suggested by his counsel, he testified to no facts that would sustain his claim. No presumption of a gift arises from such use of the principal of the wife's estate. The burden was upon defendant to prove the agreement that entitled him to her money. What agreement is made when "nothing at all" is said we are unable to guess. Even if, despite the written agreement, a promise not to require him to repay her could be inferred, it would be unenforcible from a total lack of evidence of consideration.

We are satisfied that the record is free from error and that the verdict was properly directed according to law and right.

### Order

And now, August 23, 1938, the motion ex parte defendant for a new trial is overruled and a new trial is refused; the motion ex parte defendant for judgment in his favor, non obstante veredicto, is refused and judgment is directed to be entered upon the verdict, upon payment of the jury fee.